**DEREK SMITH LAW GROUP, PLLC**
IAN M. BRYSON, ESQUIRE
Attorney ID No. 321359
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
ian@dereksmithlaw.com
*Attorneys for Plaintiff, Kristy Garayua*

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KRISTY GARAYUA,<br><br>      Plaintiff,<br><br>v.<br><br>GENERAL MOTORS FINANCIAL COMPANY, INC. *d/b/a* GM FINANCIAL *and* AMERICREDIT FINANCIAL SERVICES, INC.,<br><br>      Defendants. | Civil Action No._____<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF** *and* **DAMAGES**<br><br>JURY TRIAL DEMANDED |

## Nature of the Action

1. This is an action for relief from violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA"); the Philadelphia Fair Practices Ordinance, Philadelphia Code §§ 9-1101 et seq. ("PFPO").

2. Plaintiff seeks actual damages, compensatory damages, punitive damages, statutory penalties, reinstatement, pre- and post-judgment interest, reasonable attorneys' fees and costs of suit as remedies for Defendants' violations of her rights.

**Parties**

3. Plaintiff Kristy Garayua is an adult individual residing in Bucks County in the Commonwealth of Pennsylvania. At all relevant times, Ms. Garayua was an employee of Defendants and entitled to the protections of Title VII, the PHRA and the PFPO.

4. Defendant General Motors Financial Company, Inc. d/b/a GM Financial is a foreign business entity organized and existing under the laws of the State of Texas and registered to do business in the Commonwealth of Pennsylvania with a corporate office located at 100 Gibraltar Road, Suite 200, Horsham, PA 19044. At all relevant times, Defendant acted or failed to act through its agents, servants and employees, each of whom were acting within the course and scope of their employment with Defendant. At all relevant times, Defendant was Plaintiff's employer covered under Title VII, the PHRA and the PFPO.

5. Defendant AmeriCredit Financial Services, Inc. is a foreign business entity organized and existing under the laws of the State of Texas and registered to do business in the Commonwealth of Pennsylvania with a corporate office located at 100 Gibraltar Road, Suite 200, Horsham, PA 19044. At all relevant times, Defendant acted or failed to act through its agents, servants and employees, each of whom were acting within the course and scope of their employment with Defendant. At all relevant times, Defendant was Plaintiff's employer covered under Title VII, the PHRA and the PFPO.

6. Defendants were Plaintiff's joint employers who at all relevant times exercised joint control and dominion over the location of the work, discretion over the duration of the relationship between the parties, power over hiring and firing, responsibility over the method of payment and provision of employee benefits, and control over the daily

activity of the workers, including assignment of work, direct supervision of workers, training and furnishing of materials.

7. Defendants systematically and willfully violate workers' rights under Title VII, the PHRA, and the PFPO.

### Exhaustion of Administrative Remedies

8. Ms. Garayua timely filed a charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") alleging violations of Title VII, the PHRA and the PFPO.

9. Plaintiff's PHRA and PFPO claims are still pending before PHRC because less than one year has elapsed since PHRC assumed jurisdiction over Plaintiff's charges. After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA and PFPO claims against Defendants.

10. EEOC issued Ms. Garayua a Notice of Right to Sue Within 90 Days.

11. Ms. Garayua has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

### Jurisdiction and Venue

12. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because it involves questions of federal law under the Title VII.

13. This Court has supplemental jurisdiction over Plaintiff's PHRA and PFPO claims pursuant to 28 U.S.C. § 1367 because they arise from the same nucleus of operative facts as Plaintiff's Title VII claims.

14. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the acts and omissions giving rise to Plaintiff's claims occurred here and Defendants are subject to personal jurisdiction here.

**Facts**

15. Ms. Garayua is an adult female who worked for Respondent as a Credit Manager from March 2012 until her unlawful termination on June 3, 2021.

16. Shortly after Ms. Garayua started working for Defendants, her manager and supervisor Matthew Long began a campaign of sexual harassment against her. For example, Mr. Long picked up a piece of hair from Ms. Garayua's shirt and said, "I'll put this in my Kristy locket under my pillow." By way of further example, Mr. Long asked Ms. Garayua to go on vacation with him because he wife would not go with him. By way of further example, Mr. Long asked Ms. Garayua to "untie her shirt." By way of further example, Mr. Long frequently made inappropriate comments about Ms. Garayua's body and clothing. By way of further example, Mr. Long made unwanted inappropriate sexual advances toward Ms. Garayua during and after a holiday party when she was under the influence of alcohol.

17. Beginning on or about April 1, 2021, Ms. Garayua participated in an internal Human Resources ("HR") investigation of Mr. Long's conduct.

18. During the HR investigation, Defendants retaliated against Ms. Garayua by questioning her peers (e.g., Matt Stahl, Brian Clarke, Leticia Cruz, Brittni Pinyard) about Ms. Garayua's "leadership style," accusing her of "favoritism," accusing her of "having a sexual relationship with her boss," and accusing her of telling team members to "send clients nude pictures to get business." Additionally, during the HR investigation,

Defendants retaliated against Ms. Garayua by accusing her of receiving gifts from clients. Additionally, during the HR investigation, Defendants retaliated against Ms. Garayua by questioning her about her "relationship with her boss" including accusing her of "going to his house" and implying they had a sexual relationship. Additionally, during the HR investigation, Defendants retaliated against Ms. Garayua by accusing her of making "emotional decisions." Additionally, during the HR investigation, Defendants retaliated against Ms. Garayua by accusing her of "having a sexual relationship with a client." Additionally, during the HR investigation, Defendants retaliated against Ms. Garayua by questioning her about "friendships with other employees" and implying she failed to "report these friendships with HR."

19. On May 17, 2021, Defendants further retaliated against Ms. Garayua by placing her on a "final Notice of Corrective Action" ("NOCA") in violation of the employers' disciplinary policies even though she had never received any other disciplinary action and was an exemplary employee.

20. As a result of the NOCA, Ms. Garayua was further retaliated against by being taken out of the running to apply for a Regional Credit Manager position, which she had been seeking.

21. Ms. Garayua was told by the Vice President, Susan Miller, that she was "lucky to still have a job" and that the only reason she was still employed was because she "only hurt herself and not the company."

22. On June 1, 2021, the Defendants further retaliated and discriminated against Ms. Garayua by denying Ms. Garayua the promotion to Regional Credit Manager.

23. On June 2, 2021, Defendants further retaliated against Ms. Garayua by assigning her to the two worst performing markets. This adversely affected her performance metrics, including but not limited to her closure percentages, volume percentages and closure ratios. Defendants gave all of Ms. Garayua's similarly situated coworkers at least one good market in addition to one underperforming market.

24. On June 2, 2021, Defendants further retaliated against Ms. Garayua by assigning her to two Dealer Relationship Mangers ("DRMs") with performance issues (e.g., one was on a performance improvement plan and the other was being placed on a performance improvement plan in the near future).

25. These are the same tactics Defendants used to push other individuals out of their employment with Defendants.

26. As a result of Defendants conduct, Ms. Garayua has been forced to seek ongoing medical treatment and therapy.

27. On June 3, 2021, Ms. Garayua was constructively discharged from employment under conditions of a retaliatory hostile work environment.

28. At all relevant times, Ms. Garayua was qualified for the position and his performance was satisfactory and in accordance with the employer's expectations for the position.

29. As a result of Defendants' conduct, Ms. Garayua was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

30. As a result of Defendants' actions, Ms. Garayua felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

31. As a result of the acts and conduct complained of herein, Ms. Garayua has suffered and will continue to suffer the loss of income, loss of salary, loss of benefits and other compensation which his employment entailed.

32. Ms. Garayua also suffers future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

33. Ms. Garayua has further experienced severe emotional and physical distress.

34. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Ms. Garayua demands Punitive Damages as against all the Defendants, jointly and severally.

35. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

36. Defendants at all times refused to investigate or take appropriate remedial action in response to Ms. Garayua's complaints of discrimination, harassment, and hostile work environment.

37. Defendants discriminatory conduct was severe and pervasive, creating a hostile work environment for Ms. Garayua.

38. Defendants discriminated against Plaintiff for opposing and/or complaining about Defendants' unlawful practices under Title VII, the PHRA and the PFPO.

39. Defendants discriminated against, harassed and retaliated against Plaintiff in the terms and conditions of her employment because of Sex.

40. Defendants subjected Plaintiff to a hostile work environment because of Sex and because she complained about Defendants' unlawful conduct.

41. Defendants retaliated against Plaintiff because she reported or otherwise opposed Defendants' unlawful discriminatory Sex-based conduct and practices

42. The above are just some examples, of some of the discrimination, harassment, and retaliation to which Defendants subjected Ms. Garayua.

43. Ms. Garayua claims a practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

44. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

45. Ms. Garayua claims unlawful termination and requests reinstatement.

46. Because of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, salary, bonuses, benefits and other compensations which such employment entails; as well as past and future pecuniary losses, emotional distress, humiliation, suffering, inconvenience, loss of enjoyment of life activities, and other non-pecuniary loses.

## Causes of Action

### Count I
### Title VII Disparate Treatment
### 42 U.S.C. § 2000e-2
### Plaintiff v. Defendants

47. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

48. Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

49. Title VII further provides that "un unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

50. Defendants engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Ms. Garayua with respect to her compensation, terms, conditions, training and privileges of employment because of her sex and in retaliation for her protected activity.

51. Defendants subjected Ms. Garayua to adverse tangible employment actions—defined as significant changes in Plaintiff's employment status, discipline, denial of training, failure to promote, reassignment with significantly different job responsibilities, and decisions causing changes in significant changes in her employment benefits.

52. Ms. Garayua's protected characteristics played a determinative factor in Defendants' decisions.

53. Defendants cannot show any legitimate nondiscriminatory reasons for their employment practices and any reasons proffered by Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

54. Alternatively, Ms. Garayua's protected status played a motivating part in Defendants' decisions even if other factors may also have motivated their actions against her.

55. Defendants acted with the intent to discriminate.

56. Defendants acted upon a continuing course of conduct.

57. As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

## Count II
### Title VII Hostile Work Environment
### 42 U.S.C. § 2000e-2
### Plaintiff v. Defendants

58. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

59. Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

60. An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

61. Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action. Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

62. Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

63. The Third Circuit has held that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." Jensen v. Potter, 435 F.3d 444, 446 (3d Cir. 2006).

64. Here, Defendants' conduct occurred because of Ms. Garayua's legally protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally protected classes believe that the conditions of employment were altered and that the working environment was intimidating, hostile or abusive.

65. The harassing conduct directly refers to Plaintiff's sex and her protected activity.

66. Defendants delegated to Plaintiff's supervisors the authority to control the work environment and they abused that authority to create a hostile work environment.

67. Harassing conduct filled the environment of Plaintiff's work area.

68. Defendants knew that the harassing conduct filled Plaintiff's work environment.

69. Harassing conduct occurred daily.

70. Harassing conduct caused Plaintiff to sustain severe emotional distress resulting in physical illness and serious psychological sequelae.

71. Plaintiff subjectively regarded the harassing conduct as unwelcome and unwanted and objectively opposed the conduct.

72. The conduct was both severe and pervasive.

73. The conduct was physically threatening and humiliating.

74. The conduct unreasonably interfered with Plaintiff's work performance.

75. The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

76. Defendants provided a futile avenue for complaint.

77. Defendants retaliated against Plaintiff for her complaints.

78. Defendants acted upon a continuing course of conduct.

79. As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

**Count III**
**Title VII Retaliation**
**42 U.S.C. § 2000e-3**
**Plaintiff v. Defendants**

80. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

81. Title VII protects employees from retaliation for attempting to exercise their rights under the Act:

    42 U.S.C. § 2000e-3. Other unlawful employment practices

>   (a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

82. The Supreme Court in <u>Burlington v. N. & S.F. Ry. V. White</u>, 548 U.S. 53, 68 (2006) held that a cause of action for retaliation under Title VII lies whenever the employer responds to protected activity in such a way that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

83. Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). <u>Moore v. City of Philadelphia</u>, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.").

84. Title VII's anti-retaliation provision also protects employees who speak out about discrimination by answering questions during an employer's internal investigation. <u>Crawford v. Metropolitan Gov't of Nashville and Davidson Cty., Tennessee</u>, 555 U.S. 271, 277 (2009) (declaring that there is "no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.").

85. Retaliation need not be job-related to be actionable under Title VII—an employer can effectively retaliate against an employee by taking actions not directly related to her employment or by causing her harm outside the workplace. <u>White</u>, 548 U.S. at 61-62

(rejecting authority from the Third Circuit and others requiring that the plaintiff suffer an adverse employment action in order to recover for retaliation).

86. "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that '[she] was acting under a good faith, reasonable belief that a violation existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir.1995).

87. An employee need not be a member of a protected class to be subject to actionable retaliation under Title VII. See Moore, 461 F.3d at 342 ("Title VII's whistleblower protection is not limited to those who blow the whistle on their own mistreatment or on the mistreatment of their own race, sex, or other protected class.")

88. Here, Defendants discriminated against Plaintiff because of her protected activity under Title VII.

89. Plaintiff was acting under a reasonable, good faith belief that her right to be free from discrimination on the basis of sex and protected activity was violated.

90. Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

91. There was a causal connection between Defendants' materially adverse actions and Plaintiff's protected activity. In determining whether a plaintiff has produced evidence of causation, courts in the Third Circuit focus on two indicia: timing and evidence of ongoing antagonism. Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and Defendants' actions taken against her, such

as the unusually suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of Plaintiff's protected activity.

92. Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

93. Defendants acted upon a continuing course of conduct.

94. Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and Defendants' actions taken against her, such as the unusually-suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor (such as taking away Plaintiff's shifts) toward Plaintiff after Defendants became aware of Plaintiff's protected activity.

95. As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff demands judgment against Defendants and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendants' conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

### Count IV(PLACEHOLDER)
### PHRA Discrimination
### 43 P.S. §§ 951-963
### Plaintiff v. Defendants

96. Plaintiff's PHRA and PFPO claims are still pending before PCHR because less than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's charges. After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA and PFPO claims against Defendants.

### Count V (PLACEHOLDER)
### PHRA Retaliation
### 43 P.S. §§ 951-963
### Plaintiff v. Defendants

97. Plaintiff's PHRA and PFPO claims are still pending before PCHR because less than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's charges. After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA and PFPO claims against Defendants.

### Count VI (PLACEHOLDER)
### PHRA Aiding and Abetting
### 43 P.S. §§ 951-963
### Plaintiff v. Defendants

98. Plaintiff's PHRA and PFPO claims are still pending before PCHR because less than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's charges. After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA and PFPO claims against Defendants.

**Count VII (PLACEHOLDER)**
**PFPO Discrimination**
**PFPO §§ 9-1100 et seq.**
**Plaintiff v. Defendants**

99. Plaintiff's PHRA and PFPO claims are still pending before PCHR because less than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's charges. After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA and PFPO claims against Defendants.

**Count VIII (PLACEHOLDER)**
**PFPO Retaliation**
**PFPO §§ 9-1100 et seq.**
**Plaintiff v. Defendants**

100. Plaintiff's PHRA and PFPO claims are still pending before PCHR because less than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's charges. After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA and PFPO claims against Defendants.

**Count IX (PLACEHOLDER)**
**PFPO Aiding and Abetting**
**PFPO §§ 9-1100 et seq.**
**Plaintiff v. Defendants**

101. Plaintiff's PHRA and PFPO claims are still pending before PCHR because less than one year has elapsed since PCHR assumed jurisdiction over Plaintiff's charges. After one year, Plaintiff will seek leave to amend this complaint to assert her PHRA and PFPO claims against Defendants.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all questions of fact raised by this complaint.

                Respectfully submitted,

                **DEREK SMITH LAW GROUP, PLLC**

                */s/ Ian M. Bryson, Esquire*
                IAN M. BRYSON, ESQUIRE
Dated: September 23, 2022      *Attorneys for Plaintiff, Kristy Garayua*